IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John H. Azeltine, Jr., | ) No. CV 10-218-TUC-RCC (HCE) |
| Plaintiff, | ) **REPORT & RECOMMENDATION** |
| vs. | ) |
| Bank of America, | ) |
| Defendant. | ) |

Pending before the Court are: (1) Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Failure to State a Claim (Doc. 13) (hereinafter "Defendant's Motion to Dismiss"); (2) Plaintiff's Motion for Default Judgment (Doc. 15); (3) Defendant's Motion for Summary Disposition (Doc. 17); and (4) Plaintiff's Motion for Summary Judgment (Doc. 20).   For the following reasons, the Magistrate Judge recommends that the District Court grant Defendant's Motion to Dismiss (Doc. 13) and deny the remaining motions (Docs. 15, 17, 20).

**I.      FACTUAL & PROCEDURAL BACKGROUND**

On April 16, 2010, Plaintiff filed the instant *pro se* Complaint in addition to a request to proceed *in forma pauperis.*  (Docs. 1, 3).  The Court granted Plaintiff's request to proceed *in forma pauperis* and advised that Plaintiff would be responsible for completing service. (Doc. 9).  On July 1, 2010, Plaintiff requested that the Court direct the United States Marshal

to effect service of process on Defendant because Defendant failed to return the Waiver of Service of Summons that Plaintiff sent to "Bank of America" at a Florida address on May 25, 2010.  (Doc. 10; *see also* Doc. 15, Exh. 1).  On July 12, 2010, the Court granted Plaintiff's request and directed the United States Marshal to accomplish service by either obtaining Defendant's waiver of service or accomplishing personal service.[1]  (Doc. 11).  The record reflects that on July 26, 2010, the United States Marshal sent Defendant the necessary information to obtain waiver of service, waiver of service was not obtained, and on September 1, 2010, the Marshal "[m]oved to personal service" which was accomplished on September 14, 2010.  (Doc. 14 (Process Receipt and Return form)).  Although personal service on Defendant was not accomplished until September 1, 2010, Defendant filed its pending Motion to Dismiss on August 19, 2010.

## II.   The Pending Motions

### A.   Plaintiff's Motion for Default Judgment

Plaintiff seeks default judgment against Defendant.  Plaintiff states that Defendant failed to return waiver of service forms after Plaintiff sent them to Bank of America in Florida in May, 2010, and after the United States Marshal sent such forms to a Tucson address in July 2010.  Plaintiff also asserts that Defendant's August 19, 2010 Motion to Dismiss is untimely.

The record reflects that Defendant opted not to waive service, yet filed its August 19, 2010 Motion to Dismiss prior to personal service.  Nonetheless, given that service under the Federal Rules of Civil Procedure was not accomplished until September 14, 2010, Defendant's Motion to Dismiss was filed before an Answer was due. *See* Fed.R.Civ.P. 12(a)(1).  Additionally, because Defendant's Motion to Dismiss was filed before an Answer

---

[1]Plaintiff indicated that service was to be accomplished on Steven M. Banzhaf, Senior Vice President of Bank of America, who is located at a Tucson, Arizona address.  (Doc. 14). *See* Fed.R.Civ.P. 4(h) (providing that service on a corporation is accomplished by serving, *inter alia,* "a managing or general agent, or any other agent authorized by appointment or by law to receive service of process...").

was due, the time for filing an Answer is tolled until after resolution of that Motion.  *See* Fed.R.Civ.P. 12(a)(4).   Consequently, Defendant has not failed to timely Answer or otherwise respond to the Complaint and, thus, Defendant is not in default.

Moreover, Plaintiff's Motion is  defective under Rule 55 of the Federal Rules of Civil Procedure, which governs default. Rule 55 sets out a two-step process to secure a default judgment.  First, the plaintiff must seek an entry of default under Rule 55(a).  Once default is entered, the plaintiff may then seek a default judgment. *See* Fed.R.Civ.P. 55(b)(1) and (2). Even had Plaintiff been entitled to a default judgment, Plaintiff's Motion for Default Judgment is premature given that he did not first seek entry of default as required by Rule 55(a).

For the foregoing reasons, Plaintiff's Motion for Default Judgment should be denied.

B.      Defendant's Motion to Dismiss, Defendant's Motion for Summary Disposition, and Plaintiff's Motion for Summary Judgment

1.      Introduction

On August 19, 2010, Defendant filed the instant Motion to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant argues that the Court lacks subject matter jurisdiction over Plaintiff's claims and/or that Plaintiff fails to state a claim for relief.

Under the Rules of Practice of the U.S. District Court for the District of Arizona (hereinafter "LRCiv"), Plaintiff had thirty days after service of Defendant's Motion to Dismiss in which to serve and file his response in opposition to that Motion.  *See* LRCiv 7.2(c), 12.1(b), and 56.1(d).  Moreover, pursuant to Local Rule 7.2(i), Plaintiff's failure to file a response to Defendant's Motion to Dismiss may be "deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily."  LRCiv 7.2(i).  The record reflects that Plaintiff did not file a response to Defendant's August 19, 2010 Motion to Dismiss.  Instead, on September 24, 2010, Plaintiff filed a Motion for Default Judgment. As discussed *supra*, at II.A., Plaintiff contended that Defendant's response to his Complaint, *i.e.,* the Motion to Dismiss, was untimely served.  Also, as discussed *supra*,

1    Plaintiff's argument is without merit.

2         On October 1, 2010, Defendant filed a response in opposition to Plaintiff's Motion

3    for Default Judgment (Doc. 16).  On October 1, 2010, Defendant also filed a Motion for

4    Summary Disposition wherein Defendant requested that the Court grant Defendant's pending

5    Motion to Dismiss pursuant to LRCiv 7.2(i)  in light of Plaintiff's failure to timely respond

6    to that Motion.  Defendant also reiterated its argument as to why Plaintiff's Complaint should

7    be dismissed for lack of subject matter jurisdiction and for failure to state a claim.

8         On October 6, 2010, Plaintiff timely responded to Defendant's Motion for Summary

9    Disposition.  (Doc. 18).  He once again asserted that he is entitled to default judgment.  He

10   also argued that the Court has federal question jurisdiction over his claims.

11        On October 15, 2010, Plaintiff filed a Motion for Summary Judgment wherein he

12   takes issue with Defendant's restatement of his claims in the Motion to Dismiss and he

13   references conversations he has had with counsel for Defendant. Plaintiff's Motion for

14   Summary Judgment is essentially additional argument in opposition to Defendant's Motion

15   to Dismiss and will be treated as such.

16              2.    Defendant's Motion for Summary Disposition

17        Defendant is correct that pursuant to LRCiv 7.2(i), the Court may deem Plaintiff's

18   failure to file a timely response to Defendant's Motion to Dismiss as Plaintiff's consent to

19   the granting of that motion.  *See e.g. Ghazali v. Moran,* 46 F.3d 52, 54 (9th Cir. 1995)

20   (affirming dismissal pursuant to local rule similar to LRCiv 7.2(i), where *pro se* plaintiff

21   failed to timely respond to a motion to dismiss).  Before dismissing the action pursuant to

22   LRCiv 7.2(i), the "court is required to weigh several factors: '(1) the public's interest in

23   expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of

24   prejudice to the defendants; (4) the public policy favoring disposition of cases [on] their

25   merits; and (5) the availability of less drastic sanctions.'"  *Ghazali,* 46 F.3d at 54 (*quoting*

26   *Henderson v. Duncan,* 779 F.2d 1421, 1423 (9th Cir. 1986)).  Generally, "[t]he first two of

27   these factors favor the imposition of sanctions in most cases, while the fourth cuts against a

28   default or dismissal sanction.  Thus the key factors are prejudice and availability of lesser

1    sanctions." *Wanderer v. Johnson*, 910 F.2d 652, 656 (9th Cir. 1990).

2    　　　Herein, although Plaintiff did not timely respond to Defendant's Motion to Dismiss,

3    he did seek default judgment within a few days after his response to Defendant's Motion to

4    Dismiss was due.  Although Plaintiff should have made the parties and the Court aware of

5    his position within the response time to Defendant's Motion to Dismiss, the record reflects

6    that Plaintiff's untimely filing has not contributed greatly to the length of litigation. The

7    record also reflects that Plaintiff timely responded to Defendant's Motion for Summary

8    Disposition.  Thus, the record supports the conclusion that Plaintiff has sought to comply

9    with the rules with regard to his subsequent filings, again, in a very short amount of time.

10   The record further reveals little prejudice to Defendant at this point given that they have

11   responded to Plaintiff's filings and, as set forth *infra*, their Motion to Dismiss is well taken.

12   The Court is not unmindful that *pro se* litigants are bound by the rules of procedure. *Ghazali,*

13   46 F.3d at 53; *see also King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987)(*"[p]ro se* litigants

14   must follow the same rules of procedure that govern other litigants").    However, on the

15   instant record, given Plaintiff's *pro se* status, that he made his position clear within a short

16   time frame after his response to Defendant's Motion to Dismiss was due, and that he has

17   timely responded to Defendant's subsequent motion, summary dismissal pursuant to LRCiv

18   7.2(i) is not appropriate.  Defendant's Motion For Summary Disposition should be denied.

19   　　　　　　　3.　　　Defendant's Motion to Dismiss[2]

20   　　　Defendant moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject

21   matter jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

22   Defendant argues that Plaintiff is unable to state a claim for relief under any of the federal

23   statutes on which he relies and, therefore, the Court lacks federal question jurisdiction over

24   his claims.  Defendant also argues that Plaintiff has not set forth facts sufficient to invoke

25   diversity jurisdiction.  Thus, according to Defendant, "[e]ven accepting [Plaintiff's] factual

26   allegations as true, Mr. Azeltine can prove no set of facts in support of his claim which would

27   ───────────────

28   　　　　[2]This section also addresses Plaintiff's Motion for Summary Judgment.

entitle him to relief under any of the federal statutes.  All of his claims fail as a matter of law and the [a]ction must be dismissed in its entirety."  (Defendant's Motion to Dismiss, p.4 (emphasis omitted)).

Plaintiff contends that the Court has federal question jurisdiction over his action.  (*See* Plaintiff's Response in Opposition to Defendants [sic] Motion for Summary Judgment (Doc. 18)).

a.    Standards

(1)    Dismissal for Lack for Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissal is appropriate when the court lacks subject matter jurisdiction over a claim.  Fed. R. Civ. 12(b)(1). Subject matter jurisdiction involves the power of the court to hear the plaintiff's claims in the first place and, therefore, imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.  Because federal courts are courts of limited jurisdiction, it is presumed that a cause lies outside the jurisdiction of federal courts unless proven otherwise.  *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994).  The plaintiff bears the burden of establishing that jurisdiction exists.  *Thornhill Publishing Co. v. General Telephone & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).

"'A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may...'" attack the existence of subject matter jurisdiction as a matter of fact.  *National Union Fire Insur. Co. v. ESI Ergonomic Solutions, LLC.,* 342 F.Supp.2d 853 (D. Ariz. 2004) *(quoting Thornhill Publishing Co.,* 594 F.2d at 733). "When a motion to dismiss attacks the allegations of the complaint as insufficient to confer subject matter jurisdiction, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Id. (citing Federation of African Amer. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir. 1996)). Where the jurisdictional issue is separable from the merits of the case, the court may consider the evidence presented with respect to the jurisdictional issue, resolving factual disputes if necessary. *Thornhill,* 594 F.2d

at 733.  "When the motion is a factual attack on subject matter jurisdiction, a defendant may 'rely on affidavits or any other evidence properly before the Court.'" *National Union Fire Insur. Co*., 342 F.Supp.2d at 861  (*citing St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).  In the instance of a factual challenge, no presumption of truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating the merits of jurisdictional claims.  *Thornhill,* 594 F.2d at 733.

When a motion to dismiss is based on more than one ground, the court should consider the Rule 12(b)(1) challenge first because the other grounds will become moot if the court lacks subject matter jurisdiction.  5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure,* §1350 (2004 ed.)

(2.)    Standard for Dismissal for Failure to State a Claim

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face;' that is, plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Telasaurus VPC, LLC. v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010) (*quoting Ashcroft v. Iqbal,* __ U.S. __, 129 S.Ct. 1937, 1949 (2009)).  The court must first separate  factual allegations from legal conclusions.  *Iqbal*, ___ U.S.___, 129 S.Ct. at 1949-1950; *see also Telasaurus,* 623 F.3d. at 1003 (the court begins its review "'by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" (*quoting Iqbal,* __ U.S. __, 129 S.Ct. at 1950).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice...." *Iqbal*, ___ U.S.___, 129 S.Ct. at 1949-1950.  After eliminating such unsupported legal conclusions, the court will next identify "'well-pleaded factual allegations,' which we assume to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'" *Telasaurus,* 623 F.3d. at 1003 (*quoting Iqbal*, __ U.S. __, 129 S.Ct. at 1950).  Determining plausibility is a "context-specific task..." that requires the court to "draw on its judicial experience and common sense." *Iqbal,* __ U.S. __, 129 S.Ct. at 1950.  A complaint cannot survive dismissal where the court can only infer that a claim

1    is merely possible rather than plausible.  *Id.*

2        As a general rule, the district court may not consider any material beyond the

3    pleadings when resolving a motion to dismiss for failure to state a claim.  *Lee v. City of Los*

4    *Angeles,* 250 F.3d 668, 688 (9th Cir. 2002), *impliedly overruled on other grounds as*

5    *discussed in Gallardo v. DiCarlo,* 203 F.Supp.2d 1160, 1162 n.2(C.D. Cal. 2002).  However,

6    the court may consider material submitted as part of the complaint, such as the exhibits which

7    Plaintiff herein has attached to his Complaint.  *Id.*

8                              b.      Analysis

9        Plaintiff's Complaint arises from his allegations that Defendant Bank of America,

10   where Plaintiff banked, either sold to or shared his non-public information (hereinafter

11   "NPI") with Cross Country Home Services (hereinafter "CCHS") which ultimately resulted

12   in CCHS withdrawing funds from Plaintiff's checking account which, in turn, caused an

13   insufficient balance in Plaintiff's account and incurred other fees charged to Plaintiff because

14   of the insufficient balance. (Complaint, pp. 2-11). Plaintiff alleges that Defendant: (1)

15   breached its own policy against disclosure of NPI with non-affiliates; (2) "[s]old or gave

16   away..."  Plaintiff's NPI and/or "[s]old or gave away software that..." would allow others

17   access to his NPI; (3) promoted, facilitated, and participated in telemarketing fraud; and (4)

18   threatened to cause him economic ruin in violation of his Fourth Amendment right "to be

19   secure in his person, house, papers, and effects."  (Complaint, p.2 (capitalization in original

20   omitted)).  Plaintiff claims that Defendant's alleged conduct constituted tortious criminal acts

21   which facilitated: (1)  theft in violation of 15 U.S.C. §6801, *et seq.*;  (2) fraud in violation of

22   15 U.S.C. §§ 6101-6108 and 16 C.F.R. § 310; and (3) extortion in violation of 18 U.S.C.

23   §1951a, b(2).  (*Id.* at pp. 12-13). Plaintiff also claims that Defendant violated 18 U.S.C. §241

24   by conspiring to deprive him of his constitutional right to be secure in his person, house,

25   papers, and effects.  (*Id.* at p.13).  Plaintiff further claims breach of contract resulting from

26   Defendant's alleged selling or sharing of his NPI with CCHS.  (*Id.* at p.11). Plaintiff claims

27

28

actual damages in the amount of $120.26, court costs in the amount of $350,[3] and compensatory damages in the amount of $1,000,000.  (*Id.*).

The Court is obligated to construe *pro se* pleadings liberally.  *Haines v. Kerner,* 404 U.S. 519, 520-21 (1971).  Further, a *pro se* litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.  *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987).

> (1.)   Facilitation of theft in violation of 15 U.S.C. §§ 6801, *et seq.*

Plaintiff claims that Defendant sold to or shared his NPI and/or his checking account information with CCHS to facilitate unauthorized withdrawals from his account.  (*Id.* at p. 12).  Therefore, according to Plaintiff, Defendant's actions facilitated the theft of funds from his account in violation of the Gramm-Leach-Bliley Act (hereinafter "GLBA"), 15 U.S.C. §§ 6801, *et seq.*

Defendant claims that the GLBA does not provide a private right of action and, therefore, Plaintiff's claims must be dismissed. (Defendant's Motion to Dismiss, p.4).

For there to be a private cause of action under a federal statute, Congress must have intended to provide one.  *See Thompson v. Thompson,* 484 U.S. 174, 179 (1988).  The focus is on "Congress' intent in enacting the statute."  *Id.*  "Congress' intent may appear implicitly in the language or structure of the statute, or in the circumstances of its enactment....The intent of Congress remains the ultimate issue, however, and unless the congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."  *Id.* at 179-180 (finding that "the context, language, and legislative history of the..." federal statute at issue in that case did not provide for an implied private cause of action)  (internal quotation marks and citations omitted).

Congress enacted the GLBA primarily to "enhance competition in the financial

---

[3]Plaintiff was granted leave to file this action *in forma pauperis*. (Doc. 9).

1    services industry by providing a prudential framework for the affiliation of banks, securities
2    firms, insurance companies, and other financial service providers...."  H.R. Rep. No. 106-
3    434, at 245 (1999) (Conf. Rep.), 1999 U.S.C.C.A.N. 245 (1999); *see also* 145 Cong.Rec.
4    D1306-01 (1999).  Sections 6801 through 6809 constitute the information privacy provisions
5    of the GLBA which  require financial institutions falling within the purview of the Act to
6    protect a client's  privacy and confidentiality of nonpublic personal information. *In re Davis,* 430
7    B.R. 902, 907 (D. Colo. 2010); *see also* 15 U.S.C. § 6803.   However, the GLBA provides
8    no private cause of action; instead, the statue is clear that its provisions shall be enforced by
9    federal and state authorities.   15 U.S.C. § 6805 (the GLBA and the regulations prescribed
10   thereunder "shall be enforced by the Bureau of Consumer Financial Protection, the Federal
11   functional regulators, the State insurance authorities, and the Federal Trade Commission with
12   respect to financial institutions and other persons subject to their jurisdiction under applicable
13   law...."); *see also  Dunmire v. Morgan Stanley DW, Inc.,* 475 F.3d 956, 960 (8ᵗʰ Cir. 2007)
14   ("No private right of action exists for an alleged violation of the GLBA.")*; Rowland v.*
15   *Prudential Financial, Inc.,* 2007 WL 1893630, *6 (D. Ariz. July 2, 2007) ("[t]he provisions
16   of the GLBA are to be enforced by 'the federal functional regulators, the State insurance
17   authorities, and the Federal Trade Commission.'"), *aff'd* 362 Fed.Appx. 596 (9ᵗʰ Cir.), *cert.*
18   *denied,* __ U.S. __, 131 S.Ct. 473 (2010); *In re Davis,* 430 B.R. at 907 ("By its terms,
19   however, the [GLBA] does not create a private cause of action, nor is one implied.  No court
20   has ruled to the contrary."(footnote omitted))*; Menton v. Experian Corp,* 2003 WL 21692820
21   (S.D.N.Y. 2003) ("the GLBA does not provide for a private right of action...").[4]

22        Because the GLBA does not provide for a private cause of action, Plaintiff's claim
23   under the GLBA should be dismissed.

24

25

_____

26        [4]In July 2010, after Plaintiff filed this action and after the cases cited above were
27   decided, section 6805 as well as other provisions of the GLBA were amended. *See* PL
     111-203, 124 Stat. 1376 (July 21, 2010). The amendments do not alter the conclusion that
28   Plaintiff has no private cause of action for his claims under the GLBA.

<u>(2.) Facilitation of Fraud in violation of 15 U.S.C. §§ 6101-6108</u>

Plaintiff claims that Defendant sold his public information and NPI to CCHS or shared same with CCHS, who, in turn, "utilized the telephone system to purport [sic] fraud against the Plaintiff." (Complaint, p.12).  Plaintiff alleges that a representative of CCHS telephoned his home, spoke to his girlfriend, and signed Plaintiff up for services without ever speaking directly to Plaintiff.  (*Id.* at pp. 2-4).  Plaintiff further alleges that CCHS then withdrew a monthly fee automatically from his checking account. (*Id.* at pp.3-4).  Therefore, according to Plaintiff, Defendant facilitated telemarketing fraud in violation of the Telemarketing and Consumer Fraud and Abuse Prevention Act (hereinafter "TCFPA"), 15 U.S.C. §§6101-6108 and 16 C.F.R. § 310, because the information Defendant provided "exponentially increas[ed] the probability that Cross Country Home Services would ever contact the Plaintiff." (Complaint, p. 12)  Additionally, after the close of briefing on Defendant's motions and Plaintiff's Motion for Default Judgment, Plaintiff filed a Motion for Summary Judgment wherein, he asserted that: "The actual charge against the Defendant is Assisting or Facilitation Telemarketing Fraud, 16 C.F.R. part 310.3(4)(B) Assisting and Facilitating." (Plaintiff's Motion for Summary Judgment, p. 1).

Defendant argues that Plaintiff fails to state a claim because he does not satisfy the statutory damages requirement for bringing a civil action under the TCFPA.  (Defendant's Motion to Dismiss, p.4).  Defendant further argues that the regulation cited by Plaintiff is of no moment.  (Defendant's Response to Plaintiff's Motion for Summary Judgment (Doc. 21), pp. 2-3).

Under the TCFPA, a private person may bring an action in district court against one who assists in deceptive or abusive telemarketing acts, only if, *inter alia,* "the amount in controversy exceeds the sum or value of $50,000 in actual damages for each person adversely affected by such telemarketing."  15 U.S.C. § 6104(a).  Plaintiff alleges actual damages of

$120.26.[5]   (Complaint, p.11).   Plaintiff's alleged actual damages, then, are below the minimum actual damages amount required by the statute. Consequently, even construing Plaintiff's allegations as true, Plaintiff fails to satisfy the requirements necessary to bring a private action under the TCFPA in this Court. *See* 15 U.S.C. §6104(a).  Nor does Plaintiff's reliance on 16 C.F.R. §310 save his claim.  The regulations at 16 C.F.R. § 310 merely serve to "implement[] the Telemarketing and Consumer Fraud and Abuse Prevention Act," as codified at 15 U.S.C. §§6101 through 6108, and does not alter the actual damages requirement set forth in the statute for private causes of action. 16 C.F.R. § 310.1; *see also* 16 C.F.R. §310.7.  Therefore, Defendant is correct that Plaintiff fails to state a claim under the TCFPA.  Not only should Defendant's Motion to Dismiss be granted on this issue, but, Plaintiff's Motion for Summary Judgment should also be denied.

(3.) Extortion

Plaintiff claims that Defendant threatened him with "extreme hardship and financial ruin unless he compl[ied] with Defendant's Demand."  (Complaint, p. 13 (capitalization in original omitted)). For example, Plaintiff alleges that he received a notice from Defendant demanding that he make a deposit or Defendant: would "be forced to close the account..."; notify an account verification service which may, in turn, "result in the customer [*i.e.,* Plaintiff] being unable to establish an account in any other financial institution for up to five years...."; and/or refer his account to a collection agency.  (*Id.* at p. 8 (capitalization in original omitted); *see also* Complaint, Exh. 10). Plaintiff claims that Defendant's conduct violated the federal extortion statute codified in 18 U.S.C. § 1951.

Defendant contends that 18 U.S.C. § 1951 does not provide a private cause of action. (Defendant's Motion to Dismiss, pp. 4-5).

Section 1951 expressly provides that one who violates the statute "shall be fined under this title or imprisoned not more than twenty years, or both."  18 U.S.C. §1951(a).  The

---

[5]Defendant contests that Plaintiff suffered actual damages in this amount, contending that exhibits attached to Plaintiff's Complaint reflect he did not suffer such damages.  (*See* Defendant's Motion to Dismiss, p.6).

statute does not include any provision for civil liability and courts have consistently

recognized that section 1951

> is purely criminal in nature and does not give rise to a cause of action for civil liability. *See e.g., Peterson v. Philadelphia Stock Exch.*, 717 F.Supp. 332, 335-36 (E.D. Pa. 1989) (concluding that section 1951 does not permit a private right of action); *Creech v. Federal Land Bank,* 647 F.Supp. 1097, 1088 (D. Colo. 1986) (holding that 'no implied private cause of action exists under 18 U.S.C. §1951)).

*American Computer Trust Leasing v. Jack Farrell Implement Co.,* 763 F.Supp. 1473 (D.Minn. 1991), *aff'd and remanded American Computer Trust Leasing v. Boerboom,* 967 F.2d 1208, 1214 (8th Cir 1992) ("[W]e affirm the district court's order in all respects...."). *See also Wisdom v. First Midwest Bank of Poplar Bluff,* 167 F.3d 402, 409 (8th Cir. 1999) (en banc) ("neither the statutory language of 18 U.S.C. §1951 nor its legislative history reflect an intent by Congress to create a private right of action."); *Arista Records v. Sanchez,* 2006 WL 5908359 (C.D. Cal. Mar. 1, 2006) (holding that there is no private right of action under section 1951).   Because section 1951 does not provide for a private cause of action, Plaintiff's claim under that statute fails.

<u>(4.)   Conspiracy</u>

Plaintiff claims that Defendant's actions violated 18 U.S.C. §241 by depriving him of his constitutional right to be secure in his person, house, papers, and effects.  (Complaint, p. 13).

Defendant argues that 18 U.S.C. §241 does not authorize a private action. (Defendant's Motion to Dismiss, p.5).

Section 241 prohibits conspiracy against exercise of civil rights and provides for a fine or imprisonment up to 10 years or both for such a violation.  18 U.S.C. § 241.  The Ninth Circuit has been clear that section 241 "provide[s] no basis for civil liability."  *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980) (citation omitted).  Moreover, Plaintiff alleges a constitutional violation of his Fourth Amendment right against unreasonable searches and seizures.  One's Fourth Amendment right, however, is simply not implicated when a private party, not acting as an agent for law enforcement officials, performs the alleged search or

1   seizure.  *See United States v. Cleaveland,* 38 F.3d 1092, 1093 (9th Cir. 1995) (citations

2   omitted).   Consequently, Plaintiff's claim under 18 U.S.C. §241 should be dismissed.

3                                  (5.)   Breach of Contract

4        In his remaining claim, Plaintiff alleges that Defendant sold or shared access

5   information to his checking account in violation of "the 2005 Bank of America Privacy

6   Policy for Consumers Form 00-36-0302B 10/2004...." (Complaint, p. 11 (capitalization in

7   original omitted)).

8        Defendant argues that the Court lacks subject matter jurisdiction over this claim

9   because Plaintiff has failed to allege diversity jurisdiction. (Defendant's Motion to Dismiss,

10  p. 1 n.1). Defendant further argues that even if diversity jurisdiction were properly alleged,

11  Plaintiff nonetheless fails to state a claim. (*Id.* at pp. 5-6).

12       Rule 8(a)(1) of the Federal Rules of Civil Procedure requires, in pertinent part, that

13  a complaint contain a short and plain statement of the grounds for the court's jurisdiction.

14  Fed.R.Civ.P. 8(a)(1). Further, "[t]he party asserting federal jurisdiction bears the burden of

15  proving the case is properly in federal court." *In re Ford Motor Co./Citibank (South*

16  *Dakota), N.A.,* 264 F.3d 952, 957 (9th Cir. 2001). Plaintiff has not addressed Defendant's

17  argument on the issue of diversity of citizenship. Instead, Plaintiff maintains that "the Court

18  has always held Federal Question Jurisdiction over this case." (Plaintiff's Response in

19  Opposition to the Defendants[sic] Motion for Summary Disposition (Doc. 18), p.1). Title

20  28 U.S.C. §1331 which provides for federal question jurisdiction, states: "The district courts

21  shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

22  treaties of the United States." 28 U.S.C. §1331. Plaintiff's reliance solely on  federal

23  question jurisdiction does not save his pendant state-law breach of contract claim given that,

24  as set forth in the discussion *supra,* at II.B.3.(b.)(1.)-(4.), Plaintiff's claims arising under

25  federal statutes are not viable.

26       Diversity jurisdiction requires that the action must be between citizens of different

27

28

states[6] and that "the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs...." 28 U.S.C. § 1332(a)(1).  Plaintiff's Complaint contains no allegations respecting the citizenship of Defendant.  *See Rilling v. Burlington Northern R. Co.,* 909 F.2d 399 (9th Cir. 1990) (where complaint fails to contain allegations concerning citizenship or the dollar amount in controversy, the district court cannot properly exercise diversity jurisdiction).  Defendant's argument that the Court lacks diversity jurisdiction is well taken given that Plaintiff's Complaint fails to set forth allegations of diversity of citizenship.

As to the amount in controversy, Plaintiff alleges actual damages of $120.26 and compensatory damages of $1,000,000. "[W]here the complaint asserts a claim in the jurisdictional amount, the action should not be dismissed unless the proof not only shows that the plaintiff cannot recover that amount, but also shows this with such certainty as to indicate a lack of good faith on the part of the plaintiff bringing the action in the federal court." *Davenport v. Mutual Ben. Health & Acc. Ass'n.,* 325 F.2d 785, (9th Cir. 1963).   Plaintiff alleges that actual damages consist of: (1) $50.26 in "[u]n-refunded NSF Fees of Dec. 11, 2009"; and (2) $70 NSF fees from December 17, 2009 and December 23, 2009. (Complaint, p. 11).  Defendant contests Plaintiff's allegation that he sustained $120.26 in actual damages. Defendant asserts that Exhibits 6, 12, and 13 attached to Plaintiff's Complaint reflects that: (1) Defendant refunded $420.00 to Plaintiff's account effective January 5, 2010, which represented the overdraft fees assessed on his account including the NSF fees of December 17 and 23, 2009; and (2) Plaintiff's bank statement does not reflect an NSF fee was charged on December 11, 2009.  (Defendant's Motion to Dismiss, p. 6).  Plaintiff has not disputed Defendant's assertion, and review of the Exhibits supports Defendant's position.

Plaintiff alleges $1,000,000 in compensatory damages.  The "aim of compensatory

---

[6]Alternatively, to invoke diversity of citizenship, the action must be between: citizens of a state and citizens or subjects of a foreign state; citizens of different states and in which citizens or subjects of a foreign state are additional parties; or a foreign state, defined in 28 U.S.C. § 1603(a), as plaintiffs and citizens of a state or of different states.  28 U.S.C. § 1332(a)(2)-(4).

contract damages, the computation of which is hardly an exact science,...is to yield the net amount of the losses caused and the gains prevented by the breach of the contract, *i.e.,* The expected additions to the plaintiff's wealth and the actually resulting subtractions therefrom." *A.R.A. Mfg. Co. v. Pierce,* 86 Ariz. 136, 341 P.2d 928 (Ariz. 1959) (citations and internal quotation marks omitted).   On the instant record, the allegations in the Complaint do not readily support Plaintiff's claim for $1,000,000 in compensatory damages for alleged breach of contract.

Defendant also argues that Plaintiff fails to state a claim for breach of contract.   A plaintiff claiming breach of contract must prove a contract, a breach, and resulting damages. *See Chartone, Inc. v. Bernini,* 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (App. 2004). Defendant asserts that Plaintiff's claim fails because "there is neither a contract nor resulting damages."   (Defendant's Motion to Dismiss, p. 5).   Instead, the privacy policy at issue "is a unilateral statement of company policy, which does not constitute a contract with Bank customers, particularly in the absence of an allegation that the customer actually read and relied on the policy. *See e.g., Dyer v. Northwest Airlines Corps.,* 334 F.Supp.2d 1196, 1199-1200 (D.N.D. 2004) (holding that airline's privacy policy posted on its website did not constitute a contract with its customer in the absence of an allegation that passengers read and relied on the privacy policy)."   (*Id.* at pp. 5-6 (emphasis omitted)).

In contrast to *Dyer,* 334 F.Supp.2d at 1200, which held that a general statement of company policies, like a privacy policy, did not give rise to a contract claims, other courts have stated that, on a motion to dismiss, a court's inquiry should be whether it is plausible that the policy or statement constituted a contract. *See Smith v. Trusted Universal Standards in Elec. Transactions, Inc.,* 2010 WL 1799456 (D.N.J. May 4, 2010) (*citing Meyer v. Christie,* 2007 WL 3120695, *4 (D.Kan. Oct. 24, 2007) (finding plaintiff stated a claim for breach of contract with regard to privacy policy).   *See also Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 710 P.2d 1025 (1985) (discussing whether personnel policy manual could become part of an employment contract), *superseded by A.R.S. §23-1501 on other grounds.*   In conducting this inquiry, the court should determine whether the plaintiff

1   has alleged that he has relied on the policy. *See Smith,* 2010 WL 1799456 at * 4; *Meyer,*

2   2007 WL 3120695 at *5.

3          The instant Complaint contains no allegations that Plaintiff relied upon Defendant's

4   privacy policy in conducting business with Defendant.  Additionally, Plaintiff has also failed

5   to sufficiently plead loss, *i.e.,* damages, flowing from the alleged breach.  As discussed

6   *supra*, Defendant has pointed out that the Exhibits attached to the Complaint refute Plaintiff's

7   contention that he suffered $120.26 in actual damages.  Instead, the exhibits reflect that

8   Defendant refunded all amounts in dispute and Plaintiff has not argued otherwise.[7]

9   Moreover, the Complaint contains no facts to support Plaintiff's conclusory statement that

10  he has suffered compensatory damages.  Under such circumstances, the Complaint fails to

11  state a plausible claim for relief.

12  **III.   CONCLUSION**

13         For the foregoing reasons, all of Plaintiff's claims should be dismissed.  In the Ninth

14  Circuit, Plaintiff must be given leave to amend his complaint unless it is absolutely clear that

15  the deficiencies of the complaint could not be cured by amendment. *Noll,* 809 F.2d at 1447;

16  *see also Cook, Perkiss and Liehe, Inc. v. Northern Calif. Collection Serv.,* 911 F.2d 242, 247

17  (9th Cir. 1991) ("We have held that in dismissals for failure to state a claim, a district court

18  should grant leave to amend even if no request to amend the pleading was made, unless it

19  determines that the pleading could not possibly be cured by the allegation of other facts.").

20  The record is clear that Plaintiff's claims arising under the federal statutes relied upon in his

21  Complaint cannot be cured by amendment. Likewise, it is unlikely that Plaintiff, in good

22  faith, *see* Fed.R.Civ.P 11, could amend his breach of contract claim to satisfy the

23  requirements of diversity jurisdiction and to state a claim. Yet, it cannot be determined on

24  the instant record that no facts exist under which Plaintiff could show that he has a plausible

25  claim for relief with regard to his breach of contract claim.  In light of Plaintiff's *pro se*

26

27          [7]The record reflects that CCHS also refunded the funds that it withdrew from

28  Plaintiff's account. (Complaint, p.7 & Exh. 7).

status, the Magistrate Judge is constrained to recommend that the Complaint be dismissed with leave for Plaintiff to amend his breach of contract claim. *See Noll,* 809 F.2d at 1447. To remain in federal court, Plaintiff would also have to, in good faith, satisfy the requirements for diversity jurisdiction.

## IV.   RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court:

(1)   grant Defendant's Motion to Dismiss (Doc. 13);

(2)   deny Plaintiff's Motion for Default Judgment (Doc. 15);

(3)   deny Defendant's Motion for Summary Disposition (Doc. 17);

(4)   deny Plaintiff's Motion for Summary Judgment (Doc. 20); and

(5)   grant Plaintiff leave to amend his complaint as discussed within this Report and Recommendation *supra* at section III.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2). If objections are filed, the parties should use the following case number: **CV 10-218-TUC-RCC.**

Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. *See United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S. 900 (2003).

DATED this 13th day of December, 2010.

_____
Héctor C. Estrada
United States Magistrate Judge