6          IN THE UNITED STATES DISTRICT COURT

7          FOR THE DISTRICT OF ARIZONA

8

9   John H. Azeltine, Jr.,                    )    No. CV 10-218-TUC-JGZ (HCE)
                                              )
10              Plaintiff,                     )    **REPORT & RECOMMENDATION**
                                              )
11  vs.                                        )
                                              )
12                                             )
    Bank of America,                          )
13                                             )
                Defendant.                     )
14                                             )
                                              )
    _____       )
15

16

17          Pending before the Court is Defendant's Motion to Dismiss Amended Complaint for

18  Lack of Subject-Matter Jurisdiction and Failure to State a Claim (Doc. 33) (hereinafter

19  "Defendant's Motion"), Plaintiff has filed a Response (Doc. 35), Defendant has filed a Reply

20  (Doc. 36), and Plaintiff has filed a Response to Defendant's Reply (Doc. 37).[1]   For the

21  following reasons, the Magistrate Judge recommends that the District Court grant in part and

22  deny in part Defendant's Motion to Dismiss (Doc. 33).

23  **I.      FACTUAL & PROCEDURAL BACKGROUND**

24          Plaintiff initiated this *pro se* action on April 16, 2010.  (Doc. 1).  On April 18, 2011,

25

26  _____

27          [1]Plaintiff did not seek leave to file a response to Defendant's reply. Given Plaintiff's
    *pro se* status and Defendant's lack of objection to the filing of the document, the Court will
28  consider Plaintiff's Response to Defendant's Reply (Doc. 37).

the Honorable Raner C. Collins[2] adopted the undersigned Magistrate Judge's recommendation, *inter alia,* to grant Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and For Failure to State a Claim and to grant Plaintiff leave to amend his Complaint with regard to the breach of contract claim. (*See* Doc. 29 (Order) & Doc. 23 (Report and Recommendation)). Thereafter Plaintiff filed an Amended Complaint (Doc. 31) and Defendant filed the instant Motion.

**II.  DISCUSSION**

Defendant moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. Defendant argues that, like Plaintiff's original Complaint, Plaintiff's Amended Complaint fails to state a claim for relief under any of the federal statutes on which he relies, and therefore, the Court lacks federal question jurisdiction over Plaintiff's claims. Defendant also argues that Plaintiff has not set forth facts sufficient to invoke diversity jurisdiction and/or to establish a breach of contract claim. Defendant also requests the imposition of sanctions in the form of attorney's fees and costs.

A.  Standards

1.  Dismissal for Lack for Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissal is appropriate when the court lacks subject matter jurisdiction over a claim. Fed. R. Civ. 12(b)(1). Subject matter jurisdiction involves the power of the court to hear the plaintiff's claims in the first place, and therefore, imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power. Because federal courts are courts of limited jurisdiction, it is presumed that a cause lies outside the jurisdiction of federal courts unless proven otherwise. *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). Where the complaint fails to reflect federal jurisdiction, it must

---

[2]This matter was susbsequently reassigned to the Honorable Jennifer G. Zipps. (October 28, 2011 docket entry).

1   be dismissed. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). The plaintiff bears the

2   burden of establishing that jurisdiction exists. *Thornhill Publishing Co. v. General*

3   *Telephone & Electronics Corp.,* 594 F.2d 730, 733 (9th Cir. 1979).

4         "'A motion to dismiss for lack of subject matter jurisdiction may either attack the

5   allegations of the complaint or may...'" attack the existence of subject matter jurisdiction as

6   a matter of fact. *National Union Fire Insur. Co. v. ESI Ergonomic Solutions, LLC.,* 342

7   F.Supp.2d 853, 861 (D. Ariz. 2004) *(quoting Thornhill Publishing Co.,* 594 F.2d at 733).

8   "When a motion to dismiss attacks the allegations of the complaint as insufficient to confer

9   subject matter jurisdiction, all allegations of material fact are taken as true and construed in

10  the light most favorable to the nonmoving party." *Id. (citing Federation of African Amer.*

11  *Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir. 1996)). Where the jurisdictional

12  issue is separable from the merits of the case, the court may consider the evidence presented

13  with respect to the jurisdictional issue, resolving factual disputes if necessary. *Thornhill,* 594

14  F.2d at 733. "When the motion is a factual attack on subject matter jurisdiction, a defendant

15  may 'rely on affidavits or any other evidence properly before the Court.'" *National Union*

16  *Fire Insur. Co*., 342 F.Supp.2d at 861  (*citing St. Clair v. City of Chico*, 880 F.2d 199, 201

17  (9th Cir. 1989)).  In the instance of a factual challenge, no presumption of truthfulness

18  attaches to the plaintiff's allegations, and the existence of disputed material facts will not

19  preclude the court from evaluating the merits of jurisdictional claims. *Thornhill,* 594 F.2d

20  at 733.

21        When a motion to dismiss is based on more than one ground, the court should

22  consider the Rule 12(b)(1) challenge first because the other grounds will become moot if the

23  court lacks subject matter jurisdiction. 5 Charles Alan Wright & Arthur R. Miller, *Federal*

24  *Practice & Procedure,* §1350 (2004 ed.).

25        2.    <u>Standard for Dismissal for Failure to State a Claim</u>

26  "'To survive a motion to dismiss, a complaint must contain sufficient factual matter,

27  accepted as true, to state a claim to relief that is plausible on its face;' that is, plaintiff must

28  'plead[ ] factual content that allows the court to draw the reasonable inference that the

1  defendant is liable for the misconduct alleged.'" *Telasaurus VPC, LLC. v. Power,* 623 F.3d

2  998, 1003 (9th Cir. 2010), *cert. denied,* __ U.S. __, 132 S.Ct. 95 (2011), (*quoting Ashcroft v.*

3  *Iqbal,* 556 U.S. 662, __, 129 S.Ct. 1937, 1949 (2009)).  The court must first separate  factual

4  allegations from legal conclusions.  *Iqbal*, 556 U.S. at___, 129 S.Ct. at 1949-1950; *see also*

5  *Telasaurus,* 623 F.3d. at 1003 (the court begins its review "'by identifying pleadings that,

6  because they are no more than conclusions, are not entitled to the assumption of truth.'"

7  (*quoting Iqbal,* 556 U.S. at __, 129 S.Ct. at 1950).  Thus, "[t]hreadbare recitals of the

8  elements of a cause of action, supported by mere conclusory statements, do not suffice."

9  *Iqbal*, 556 U.S . at___, 129 S.Ct. at 1949.  After eliminating such unsupported legal

10  conclusions, the court will next identify "'well-pleaded factual allegations,' which we assume

11  to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'"

12  *Telasaurus,* 623 F.3d. at 1003 (*quoting Iqbal*, 556 U.S. at __, 129 S.Ct. at 1950).

13  Determining plausibility is a "context-specific task..." that requires the court to "draw on its

14  judicial experience and common sense."  *Iqbal*, 556 U.S. at __, 129 S.Ct. at 1950.  A

15  complaint cannot survive dismissal where the court can only infer that a claim is merely

16  possible rather than plausible.  *Id.*

17        As a general rule, the district court may not consider any material beyond the

18  pleadings when resolving a motion to dismiss for failure to state a claim.  *Lee v. City of Los*

19  *Angeles,* 250 F.3d 668, 688 (9th Cir. 2002), *impliedly overruled on other grounds as*

20  *discussed in Gallardo v. DiCarlo,* 203 F.Supp.2d 1160, 1162 n.2(C.D. Cal. 2002).  However,

21  the court may consider material submitted as part of the complaint, such as the exhibits which

22  Plaintiff herein has attached to his Amended Complaint.  *Id.*

23        B.     Analysis

24        Plaintiff's Complaint arises from his allegations that Defendant Bank of America,

25  where Plaintiff banked, either sold to or shared his non-public information (hereinafter

26  "NPI") with Cross Country Home Services (hereinafter "CCHS") which ultimately resulted

27  in CCHS withdrawing funds from Plaintiff's checking account which, in turn, caused an

28  insufficient balance in Plaintiff's account and incurred other fees charged to Plaintiff because

- 4 -

1  of the insufficient balance. (Amended Complaint, pp. 2-7). Plaintiff contends that Defendant

2  targeted him "because he is a likely prospect for overdrafts under these circumstances...." and

3  threatened to cause him economic ruin. (*Id.* at p. 7). Plaintiff alleges that Defendant: (1)

4  breached its policy against disclosure of NPI with non-affiliates by selling or sharing

5  Plaintiff's NPI with CCHS; (2) "assisted and allowed [CCHS] to withdraw funds directly

6  from the Plaintiff's [c]hecking [a]ccount", resulting in "facilitation of theft and conspiracy

7  to commit fraud and conversion" in violation of 15 U.S.C. §1692, *et. seq.*; (3) "assisted and

8  encouraged [CCHS] to contact the Plaintiff", resulting in facilitation of telemarketing fraud

9  in violation of 15 U.S.C. §§ 6101-6108; and (4) violated "Bus. & Prof. Code §17200, *et.*

10 *seq....*" (*Id.*) (capitalization in original omitted). Plaintiff claims actual damages in the

11 amount of $120.26, court costs in the amount of $350,[3] and damages for "breach of contract

12 and tortious criminal acts" in the amount of $1,000,000. (*Id.* at p.8) (capitalization in original

13 omitted).

14     The Court is obligated to construe *pro se* pleadings liberally. *Haines v. Kerner,* 404

15 U.S. 519, 520-21 (1971). Further, a *pro se* litigant must be given leave to amend his or her

16 complaint unless it is absolutely clear that the deficiencies of the complaint could not be

17 cured by amendment. *Noll v. Carlson*, 809 F.2d 1446, 1447 (9th Cir. 1987), *superseded on*

18 *other grounds by statute as stated in Lopez v. Smith,* 203 F.3d 1122 (9th Cir. 2000) (*en banc)*.

19          1.     Plaintiff's claims based on violation of federal statutes

20               a.     Facilitation of theft and conspiracy to commit fraud and

21               conversion in violation of 15 U.S.C. § 1692, *et seq.*

22     Plaintiff alleges that Defendant:

23 assisted and allowed [CCHS] to withdraw funds directly from Plaintiff's
   Checking Account. Violating [the Fair Debt Collection Practices Act
24 (hereinafter "FDCPA")] 15 U.S.C. § 1692 *et. seq.* [w]hich provides for a
   Private Cause of Action when GLBA Laws are [v]iolated.
25
(Amended Complaint, p. 7).

26

27 _____

28     [3]Plaintiff was granted leave to file this action *in forma pauperis*. (Doc. 9).

1  Defendant contends that this claim must be dismissed because Defendant is not a

2  "creditor"[4] within the meaning of the FDCPA and there was no "debt"[5] as that term is

3  statutorily defined.  (Defendant's Motion, pp. 7-8).  Defendant also contends that Plaintiff

4  did not have overdraft protection on his checking account and, even if he did, such protection

5  would not fall within the FDCPA.  (Defendant's Reply, pp, 8-9).   Plaintiff counters that

6  Defendant offered and extended credit to Plaintiff as part of his checking account which

7  provided for overdraft protection and that the use of overdraft protection constitutes a loan.

8  (Plaintiff's Response, p.5; *see also* Amended Complaint, ¶14 (alleging that Plaintiff had

9  overdraft protection at the relevant time)).

10  The purpose of the FDCPA is:

11  > to eliminate abusive debt collection practices *by debt collectors*, to insure that
   > those debt collectors who refrain from using abusive debt collection practices
12  > are not competitively disadvantaged, and to promote consistent State action to
   > protect consumers against debt collection abuses.

13
14  15 U.S.C. §1692(e) (emphasis added).  "Ordinarily, the FDCPA protects consumers against

   only those entities that collect debts for third parties." *Fleeger v. Bell,* 95 F.Supp.2d 1126,
15
   1130 (D. Nev. 2000)(*citing Romine v. Diversified Collection Servs., Inc.,* 155 F.3d 1142,
16
   1146 (9th Cir. 1998)).  However, the FDCPA does provide that: "any creditor who, in the
17
   process of collecting his own debts, uses any name other than his own which would indicate
18

19  [4]The FDCPA defines the term "creditor" as:

20  any person who offers or extends credit creating a debt or to whom a debt is
   owed, but such term does not include any person to the extent that he receives
21  an assignment or transfer of a debt in default solely for the purpose of
   facilitating collection of such debt for another.
22  15 U.S.C. §1692a(4).

23

24  [5]The FDCPA defines the term "debt" as:

25  any obligation or alleged obligation of a consumer to pay money arising out
   of a transaction in which the money, property, insurance, or services which are
26  the subject of the transaction are primarily for personal, family, or household
   purposes, whether or not such obligation has been reduced to judgment.
27  15 U.S.C. §1692a(5).  *See also Bloom v. I.C. Sys. Inc.,* 972 F.2d 1067, 1068-69 (9th Cir.

28  1992) (the FDCPA applies to debts incurred for personal rather than commercial reasons).

1   that a third person is collecting or attempting to collect such debts."  15 U.S.C. §1692a(6).

2          The allegations of the Amended Complaint are clear that Plaintiff received from

3   Defendant statements and notices reflecting insufficient funds in his account and the

4   imposition of "NSF fees" on the account. (Amended Complaint, ¶¶ 14, 15 (*citing* Amended

5   Complaint Exh. 7), 16 (*citing* Amended Complaint, Exh. 8); *see also* Amended Complaint

6   Exhs. 5, 6). Plaintiff also alleges that he received a letter from Defendant[6] stating, in pertinent

7   part, that Plaintiff's account:

8          has been overdrawn since 11/17/2009....Your business is important to us:
           please resolve the situation without further delay.  If you do not make a deposit
9          immediately, we may transfer funds from other accounts you have with Bank
           of America or be forced to close your account, an action we do not want to
10         take.
           Should we have to close your account, we may send a report to ChexSystems
11         Inc., an account verification service.  Reports submitted to ChexSystems may
           result in your being unable to establish an account with any financial
12         institution for up to five years, even though you repay the debt, thereby
           causing you great inconvenience.  We may also refer your account to a
13         collection agency and any balance owed may be subject to a collection fee
           and/or interest charge.
14
    (Amended Complaint Exh. 7; *see also* Amended Complaint ¶15).  Plaintiff generally alleges
15
    that Defendant violated the FDCPA and does not cite any specific provision(s) of the Act.
16
    The Court views Plaintiff's factual allegations as true and in his favor.
17
           Even if Defendant was a creditor under the FDCPA collecting upon a debt as defined
18
    by the Act, Plaintiff fails to allege any conduct by Defendant constituting a violation of the
19
    FDCPA.  The crux of Plaintiff's FDCPA claim is that Defendant attempted to collect an
20
    outstanding debt owed to it, and using its own letterhead, "threatened" to report Plaintiff to
21
    ChexSystems, Inc. (Amended Complaint, p. 7 & Exh. 7).  Plaintiff's allegations do not
22
    establish that Defendant is a "debt collector" within the meaning of the FDCPA. *See Owusu*
23
    *v. New York State Insur.,* 655 F.Supp.2d 308 (S.D.N.Y. 2009) ("Since HSBC's letter was
24
    sent in its own name...it cannot be held liable under the FDCPA."); *Fleeger,* 95 F.Supp.2d
25

26

27         [6]The letter indicates it is from: "Bank of America Customer Service".  (Amended
    Complaint, Exh. 7).  Bank of America's name and Phoenix, Arizona, return address  also
28  appear on the Exhibit.  (*Id.*).

1   at 1130 (dismissing FDCPA claim where plaintiff failed to allege "false suggestion of third-

2   party debt collection required by §1692a(6)(A) to bar self-help efforts of a creditor."); *Fonua*

3   *v. First Allied Funding,* 2009 WL 816291 (N.D. Cal. Mar. 27, 2009)(granting motion to

4   dismiss FDCPA claim against creditor acting on its own behalf); *Showalter v. Chase*

5   *Manhattan/Providian,* 2005 WL 2000943 (N.D. Cal. Aug. 19, 2005) (same). Consequently,

6   Plaintiff fails to state a claim under the FDCPA.

7                       b.       Facilitation of telemarketing fraud in violation of 15 U.S.C.

8                       §§6101-6108

9           Plaintiff claims that Defendant "assisted and encouraged [CCHS] to contact the

10  Plaintiff" by telephone in violation of the Telemarketing and Consumer Fraud and Abuse

11  Prevention Act (hereinafter "TCFPA"), 15 U.S.C. §§6101-6108, and 16 C.F.R. §310.

12  (Amended Complaint, ¶¶1, 6-9, 19, & p.7).

13          Defendant points out that this claim is similar to that advanced in Plaintiff's original

14  complaint which the Court dismissed because Plaintiff's alleged actual damages were below

15  the minimum actual damages required by the TCFPA. (Defendant's Motion, p. 8; *see also*

16  Report and Recommendation (Doc. 23), pp. 11-12).

17          The Report and Recommendation recommending dismissal of Plaintiff's TCFPA

18  claim pointed out in pertinent part:

19          Under the TCFPA, a private person may bring an action in district court
            against one who assists in deceptive or abusive telemarketing acts, only if,
20          *inter alia,* "the amount in controversy exceeds the sum or value of $50,000 in
            actual damages for each person adversely affected by such telemarketing." 15
21          U.S.C. § 6104(a).  Plaintiff alleges actual damages of $120.26.  (Complaint,
            p.11).  Plaintiff's alleged actual damages, then, are below the minimum actual
22          damages amount required by the statute. Consequently, even construing
            Plaintiff's allegations as true, Plaintiff fails to satisfy the requirements
23          necessary to bring a private action under the TCFPA in this Court. *See* 15
            U.S.C. §6104(a).  Nor does Plaintiff's reliance on 16 C.F.R. §310 save his
24          claim.  The regulations at 16 C.F.R. § 310 merely serve to "implement[] the
            Telemarketing and Consumer Fraud and Abuse Prevention Act," as codified
25          at 15 U.S.C. §§6101 through 6108, and does not alter the actual damages
            requirement set forth in the statute for private causes of action.  16 C.F.R. §
26          310.1; *see also* 16 C.F.R. §310.7.  Therefore, Defendant is correct that Plaintiff
            fails to state a claim under the TCFPA.

27
    (*See* Report and Recommendation (Doc. 23), pp. 11-12) (footnote omitted).
28

1    Plaintiff had the opportunity to file an objection to the Report and Recommendation

2    on this issue.  (*See* Report & Recommendation (Doc. 23), p.18 (advising parties of the right

3    to file objections); Plaintiff's Objection (Doc. 24)).  After review of Plaintiff's Objection, the

4    District Court adopted the recommendation that Plaintiff's TCFPA claim be dismissed.

5    (Order (Doc. 29)).

6          In his Amended Complaint,

7          Plaintiff argues that it is not and was not the intent of the FTC to allow
           facilitators to assist others to the point of $50,000 in actual damages before a
8          private cause of action could be taken under 16 CFR 310(3)(b) Assisting and
           Facilitation Telemarketing Fraud.  Including  310.3(a) or 310.03(c), or Rule
9          4 of this Rule.
           To the best research and knowledge of the Plaintiff this situation has never
10         been tested in Federal Court.

11   (Amended Complaint, ¶19) (capitalization and emphasis in original omitted).  Plaintiff

12   attaches to his Amended Complaint a December 2010 letter he sent to the Federal Trade

13   Commission, Bureau of Consumer Protection, indicating his "intention...to argue that 16

14   CFR 310.1 can be severed in part from the 15 USC [§] 6104 provision requiring $50,000 in

15   damages, contending that it is not the Commissions [sic] intent to sanction Facilitators after

16   the damage is already done, but to try to prevent it."  (Amended Complaint, Exh. 10).

17   Plaintiff's allegation of actual damages in the Amended Complaint is the same as that alleged

18   in the original complaint: $120.26.  (Amended Complaint, p.8; Complaint, p.11).

19         Because Plaintiff alleges actual damages in the amount of $120.26, his Amended

20   Complaint does not fall within the purview of the TCFPA and such claim should be

21   dismissed.  *See* 15 U.S.C. §6104(a).

22                     c.      Violation of 15 U.S.C. § 6801 *et seq.*

23         Plaintiff "alleges a violation of 15 U.S.C. §6801, *et seq.*...", the Gramm-Leach-Bliley

24   Act (hereinafter "GLBA"). (Amended Complaint, ¶22) (capitalization and emphasis in

25   original omitted).  As the basis for this claim, Plaintiff alleges that Defendant could only

26   disclose Plaintiff's NPI to an agent or service provider to perform marketing of the financial

27   institution's own products or services and only if the agent or service provider was not

28   authorized to directly initiate charges to Plaintiff's account.  (*Id.*).

1  Plaintiff's original complaint also contained a GLBA claim. (Complaint, p.12).  After

2  an opportunity for Plaintiff's Objection and review of same, the District Court adopted the

3  Report and Recommendation to dismiss that claim because no private right of action is

4  provided under the GLBA.  (Order (Doc. 29);Report and Recommendation (Doc. 23), pp. 9-

5  10 (*citing* 15 U.S.C. §6805 (the GLBA and the regulations prescribed thereunder "shall be

6  enforced by the Bureau of Consumer Financial Protection, the Federal functional regulators,

7  the State insurance authorities, and the Federal Trade Commission with respect to financial

8  institutions and other persons subject to their jurisdiction under applicable law...."); *Dunmire*

9  *v. Morgan Stanley DW, Inc.,* 475 F.3d 956, 960 (8th Cir. 2007) ("No private right of action

10  exists for an alleged violation of the GLBA.")*;  Rowland v. Prudential Financial, Inc.,* 2007

11  WL 1893630, *6 (D. Ariz. July 2, 2007) ("[t]he provisions of the GLBA are to be enforced

12  by 'the federal functional regulators, the State insurance authorities, and the Federal Trade

13  Commission.'"), *aff'd* 362 Fed.Appx. 596 (9th Cir.), *cert. denied,* __ U.S. __, 131 S.Ct. 473

14  (2010); *In re Davis,* 430 B.R. 902, 907 (D.Colo. 2010) ("By its terms, however, the [GLBA]

15  does not create a private cause of action, nor is one implied.  No court has ruled to the

16  contrary."(footnote omitted))*; Menton v. Experian Corp,* 2003 WL 21692820 (S.D.N.Y.

17  2003) ("the GLBA does not provide for a private right of action..."))[7]

18       The Amended Complaint does not change the fact that there is no private right of

19  action under the GLBA.  Plaintiff's GLBA claim should be dismissed.

20            2.    State law claims

21       Plaintiff advances two state law claims: (1) violation of California's Business and

22

23

24       [7]The Report and Recommendation also noted that section 6805 was amended after
Plaintiff filed his original complaint but that such amendment did not alter the conclusion

25  that Plaintiff has no private cause of action for his GLBA claim.   (Report and
Recommendation, p. 10 n.4).  The amended version of the Act reads, in pertinent part, that

26  enforcement of the GLBA and regulations prescribed thereunder shall be "by the Federal
functional regulators, the State insurance authorities, and the Federal Trade Commission with

27  respect to financial institutions and other persons subject to their jurisdiction under applicable

28  law as..." set forth in subsection (a)(1)-(7).  15 U.S.C. §6805(a).

1  Professional Code § 17200 *et seq.*; and (2) breach of contract.

2  <center>a.    California Business and Professional Code</center>

3        Plaintiff alleges that Defendant targeted him for fraud and that Defendant engaged in

4  unlawful, unfair, and fraudulent business practices under California's Business and

5  Professional Code §17200. (Amended Complaint, p.7). Plaintiff also alleges that he is a

6  resident of Tucson, Arizona, and Defendant is a resident of Charlotte, North Carolina. (*Id.*

7  at p.1). Defendant argues that the statute does not apply to this action for several reasons,

8  including that Plaintiff is a resident of Arizona. (Defendant's Motion, p. 9).

9        Under the California statute, any person who has performed, is performing or

10  proposing to perform, an act of unfair competition may be enjoined in any court of competent

11  jurisdiction. Cal. Bus. & Prof. Code § 17203. As used within the statute, the term "unfair

12  competition" includes "any unlawful, unfair or fraudulent business act or practice and unfair,

13  deceptive, untrue or misleading advertising...." Cal. Bus. & Prof. Code § 17200.

14        "California law embodies a presumption against the extraterritorial application of its

15  statutes." *Churchill Village, L.L.C. v. General Elec. Co.,* 169 F.Supp.2d 1119, 1126 (N.D.

16  Cal. 2000) (*citing Diamond Multimedia Systems, Inc. v. Superior Court,* 80 Cal.Rptr.2d 828,

17  958 P.2d 539 (App. 1999)), *aff'd on other grounds,* 361 F.3d 566 (9th Cir. 2004). Moreover,

18  "section 17200 does not support claims by non-California residents where none of the alleged

19  misconduct or injuries occurred in California." *Id.* (*citing Norwest Mtg., Inc. v. Superior*

20  *Court,* 85 Cal.Rptr.2d 18 (App. 1999)); *see also Sullivan v Oracle Corp.,* 51 Cal. 4th 1192,

21  1297, 254 P.3d 237, 248 (2011) (when deciding certified question from the Ninth Circuit,

22  recognizing that "[n]either the language of [ section 17200 *et seq.*]...nor its legislative history

23  provides any basis for concluding the Legislature intended the [statute] to operate

24  extraterritorially. Accordingly, the presumption against extraterritoriality applies to [the

25  statute] in full force[]" and holding that the statute did not apply to non-California residents

26  performing work outside California for a California-based employer); *Sullivan v. Oracle,*

27  *Corp.,* __ F.3d __, 2011 WL 615942 (9th Cir. Dec. 13, 2011) (conforming certified question

28  and stating that the California Supreme Court's decision on the certified question in *Sullivan*

<center>- 11 -</center>

1    "is conclusive."). Plaintiff has alleged that he is a resident of Arizona. Further, Plaintiff has

2    not alleged that any of Defendant's purported misconduct occurred in California.

3    Accordingly, even if federal jurisdiction could exist over such a claim, Plaintiff fails to state

4    a claim under section 17200 of the California Business and Professional Code.

5                                  2.      Breach of contract

6          Similar to the allegations in his original complaint, Plaintiff alleges in his Amended

7    Complaint that Defendant breached its privacy policy regarding the selling or sharing of

8    customer information to outside marketers. (Amended Complaint, ¶¶20-21 & Exh. 11).

9    Plaintiff adds to his Amended Complaint the allegation that he read and relied upon

10    Defendant's privacy policy when he decided to conduct business with Defendant. (*Id.* at

11    ¶20). Defendant argues that the privacy policy does not constitute a contract with

12    Defendant's customers and even if it did, Plaintiff fails to satisfy the amount in controversy

13    requirement for diversity jurisdiction. (Defendant's Motion, pp. 3-7). Defendant also points

14    out that even though Plaintiff "purports to '[e]xert a claim for relief...on the grounds of

15    ...breach of implied security', (*See* Amended Complaint at page 8)[,] [n]o reported case has

16    recognized such a cause of action in Arizona or under federal law. To the extent that he

17    raises this as a cause of action, it should be dismissed." (Defendant's Motion, p. 3, n.2)

18    (capitalization in original omitted). Plaintiff mentions breach of implied security in

19    connection with his breach of contract claim. (*See* Amended Complaint, p.8). In that portion

20    of Plaintiff's Amended Complaint setting out Plaintiff's "CHARGES" against Defendant,

21    Plaintiff mentions breach of contract and violation of the federal statutes discussed *supra*, at

22    II.B.1.a.-c., but he does not include reference to a breach of implied security. (*See* Amended

23    Complaint, p. 7) (capitalization in original). Plaintiff does not address this issue in either of

24    his Responses. Plaintiff has not provided any support for such a cause of action under either

25    federal or state law.

26          Plaintiff alleges that the Court has diversity jurisdiction over this action because

27    Plaintiff and Defendant are "of diverse citizenship." (Amended Complaint, p. 1 (*citing* 28

28    U.S.C. §1332(a)(1)). Diversity jurisdiction exists in an action between citizens of different

states if the amount in controversy exceeds $75,000 exclusive of interest and costs. *See* 28

U.S.C. § 1332(a)(1). When, as here, "the plaintiff originally files in federal court, 'the

amount in controversy is determined from the face of the pleadings.'" *Geographic*

*Expeditions, Inc., v. Estate of Lhotka ex rel. Lhotka,* 599 F.3d 1102, 1106 (9th Cir. 2010)

(*quoting Crum v. Circus Circus Enters.,* 231 F.3d 1129, 1130 (9th Cir. 2000)). Moreover,

> [t]he amount in controversy alleged by the proponent of federal jurisdiction-typically the plaintiff in the substantive dispute-controls so long as the claim is made in good faith...[*Crum,* 231 F.3d at 1131)]. "To justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* (internal quotation omitted). This is called the "legal certainty" standard, which means a federal court has subject matter jurisdiction unless "upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 292...(1938).

*Id. See also Riggins v. Riggins,* 415 F.2d 1259, 1269 (9th Cir. 1969) ("The basic rule is that,

for jurisdictional purposes, the amount in controversy is measured by the amount of the

claim....This rule is subject to the qualification that the amount of the claim must appear to

be in good faith and not fictitiously asserted simply to allege a sum sufficient for federal

jurisdiction.").

Plaintiff attaches to his Amended Complaint a letter on Bank of America letterhead

from Derek Kaltenbach, "Officer/Customer Advocate[,]Office of the CEO and President"

indicating that:

> we regret the challenges and any inconvenience you have experienced as a result of the activity on [Plaintiff's] account..., including the assessment of overdraft fees. I have reviewed your account and appreciate this chance to share my findings and resolution.
>
> Although no bank error has been identified in this matter, I have refunded $420.00 to [Plaintiff's account], effective January 5, 2010, as a courtesy to you. We hope you see this gesture as a reflection of our commitment to service your financial needs. Our records show that the four $39.95 charges applied by Cross Country Home Services (in August, September, October and November) were refunded to the account as one credit for $159.80 on December 11, 2009.

(Amended Complaint, Exh. 9). Plaintiff alleges $120.26 in actual damages. (Amended

Complaint, p. 8). He also alleges $350 in "court costs" even though the Court permitted him

to file this action without prepayment of fees. (*Id.*) (capitalization in original omitted);Doc.

9). Plaintiff alleges $1,000,000 in damages resulting from breach of contract *and* tortious criminal acts. (*Id.*). However, in light of the analysis *supra*, the only claim remaining is the breach of contract claim. Plaintiff's total demand for damages is: $1,000,470.26. (*Id.*).

Court costs do not factor into the amount in controversy required for diversity jurisdiction. *See* 28 U.S.C. §1332(a)(1). Plaintiff's allegations of actual damages fall far below the amount in controversy required for diversity jurisdiction. With regard to Plaintiff's claim for damages for breach of contract, Defendant points out that "'[c]onsequential damages are damages which arise naturally from the breach of a contract that were within the parties' contemplation.'" (Defendant's Motion, p. 5 (*quoting Ponderosa Plaza v. Siplast,* 181 Ariz. 128, 888 P.2d 1315, 1319 (App. 1993)). Further, the "the aim of compensatory contract damages, the computation of which is hardly an exact science,...is to yield the net amount of the losses caused and the gains prevented by the breach of the contract, *i.e.,* The expected additions to the plaintiff's wealth and the actually resulting subtractions therefrom." *A.R.A. Mfg. Co. v. Pierce,* 86 Ariz. 136, 141, 341 P.2d 928, 932 (Ariz. 1959) (citations and internal quotation marks omitted). Moreover, "[p]unitive damages are not usually awarded in contract actions, unless there is an accompanying tort." *Miscione v. Bishop,* 130 Ariz. 371, 374-375, 636 P.2d 149, 152-153 (App. 1981).

"While a federal court must of course give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury. This is especially so when, after jurisdiction has been challenged, a party has failed to specify the factual basis of his claims." *Diefenthal v. C.A.B.,* 681, F.2d 1039, 1052 (5th Cir. 1982). As the party invoking this Court's jurisdiction, Plaintiff has the burden of establishing the factual basis of his claim. *See id.* Neither the allegations of the Amended Complaint and documents attached thereto, nor Plaintiff's opposition to Defendant's Motion, allege facts plausibly supporting in any way a basis for damages satisfying the required amount for diversity jurisdiction. Upon review of the instant record, it "'appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount...'" and, thus, dismissal is justified. *Geographic Expeditions, Inc.,* 599

1  F.3d at 1106 (*quoting Crum,* 231 F.3d at 1131).  Consequently, even if Plaintiff were able

2  to state a claim for breach of contract, his claim must be dismissed for lack of jurisdiction.

3                          3.    Defendant's request for attorney's fees

4         For the foregoing reasons, Plaintiff's claims raised in his Amended Complaint should

5  be dismissed.  Relying on Rule 11 of the Federal Rules of Civil Procedure, Defendant

6  requests that  the Court award judgment against Plaintiff for Defendant's attorney's fees and

7  costs incurred in defending this matter.  (Defendant's Motion, pp. 9-10).

8         Under Rule 11, the Court may impose sanctions, including attorney's fees and other

9  expenses, when a pleading is frivolous, legally unreasonable, without factual foundation, or

10 is brought for an improper purpose. *See* Fed.R.Civ.P. 11(b).  "A motion for sanctions [under

11 Rule 11] must be made separately from any other motion...."  Fed.R.Civ.P. 11(c)(2).

12 Additionally, before seeking Rule 11 sanctions from the court, the movant must first serve

13 the offending party and afford that party the opportunity to withdraw the frivolous or

14 meritless pleading. *Id.*   Defendant has not filed a separate motion for sanctions but has

15 instead requested fees within its Motion to Dismiss.  Moreover, there is no showing that

16 Defendant has complied with the safe harbor provision of Rule 11(c)(2). Because Defendant

17 has failed to comply with Rule 11(c)(2), Defendant's request for attorney's fees and costs

18 should be denied at this time.

19 **III.    CONCLUSION**

20        Plaintiff's has failed in his second attempt to invoke this Court's federal question and

21 diversity jurisdiction with regard to the instant dispute. Despite the Court's specific ruling

22 that Plaintiff did not meet the statutory damages requirement of the TCFPA, Plaintiff re-

23 urged a TCFPA claim even though he again alleged actual damages well under the specified

24 statutory amount. Despite the Court's clear ruling that there was no private right of action

25 under the GLBA, Plaintiff nonetheless re-urged a claim under the GLBA. Further, Plaintiff's

26 attempt to allege claims under federal statutes that were not invoked in his original complaint

27 also fails and given the allegations of the Amended Complaint, there appears no set of facts

28 upon which Plaintiff could state a claim under those statutes.  This same conclusion holds

1    true for Plaintiff's attempt to invoke California's Business and Professional Code §17200.

2    Moreover, despite being advised that the allegations of the original complaint did not support

3    a claim for damages that would allow diversity jurisdiction, Plaintiff's Amended Complaint

4    fails to satisfy the amount in controversy requirement of 28 U.S.C. § 1332(a)(1). On the

5    instant record, further attempts at amendment would be futile and this action should be

6    dismissed. *See Lopez,* 203 F.3d at 1127; *Noll*, 809 F.2d at 1448(*citing Broughton v. Cutter*

7    *Labs*., 622 F.2d 458, 460 (9th Cir. 1980)).

8    **IV.    RECOMMENDATION**

9         For the foregoing reasons, the Magistrate Judge recommends that the District Court

10    grant in part and deny in part Defendant's Motion to Dismiss Amended Complaint for Lack

11    of Subject-Matter Jurisdiction and Failure to State a Claim (Doc. 33).  Defendant's Motion

12    should be granted to the extent that Defendant seeks dismissal of this action.  Defendant's

13    Motion should be denied to the extent that Defendant requests sanctions.

14         Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil

15    Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of

16    Arizona, any party may serve and file written objections within fourteen (14) days after being

17    served with a copy of this Report and Recommendation.  A party may respond to another

18    party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P.

19    72(b)(2). If objections are filed, the parties should use the following case number: **CV 10-**

20    **218-TUC-JGZ**.

21         Failure to file timely objections to any factual or legal determination of the Magistrate

22    Judge may be deemed a waiver of the party's right to *de novo* review of the issues.  *See*

23    *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S.

24    900 (2003).

25         DATED this 16th day of December, 2011.

26

27    _____

                     Héctor C. Estrada

28             United States Magistrate Judge